**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**TRACY RHINE,**

   **Plaintiff,**

           **Civil Action No. 5:12cv67**
           **(Judge Stamp)**

**UNITED STATES OF AMERICA,**

   **Defendants.**

### REPORT AND RECOMMENDATION AND ORDER TO SHOW CAUSE

On April 19, 2012, while incarcerated at Hazelton SFF in Bruceton Mills, West Virginia, the *pro se* plaintiff initiated this case by filing a Federal Tort Claim Act complaint pursuant 28 U.S.C. § 2671, *et seq.* in the Northern District of Texas, along with a motion for leave to proceed *in forma pauperis* ("IFP"). On May 10, 2012, Northern District of Texas erroneously transferred the case to this Court as a § 1983 action.

Because the plaintiff had failed to file her complaint in the proper form, had not provided a copy of her application to proceed *in forma pauperis* ("IFP") on the proper form, and did not provide a copy of her Prisoner Trust Account Report or her Consent to Collect, the Clerk of Court issued a deficiency notice on May 11, 2012, advising her to file all of the above-named corrected documents within 21 days.

On May 14, 2012, a preliminary review of the case was undertaken to determine whether a show cause order was appropriate. During that review, it was discovered that the case was improperly opened as a § 1983 action. An Order was entered, directing the Clerk to correct the nature of the suit and cause of action to reflect that plaintiff's complaint arose under the Federal Tort Claim Act, and to send plaintiff an Amended Notice of Deficient Pleading. On June 1, 2012,

plaintiff filed her court-approved form complaint, IFP application and Consent to Collect. By Order entered June 6, 2012, she was granted IFP status and directed to pay an initial partial filing fee ("IPFF"). An Order was also entered, directing that the medical records attached to plaintiff's form complaint be sealed. On June 12, 2012, plaintiff filed a Motion Requesting Court Order Concerning Waiver of or Suspension of State Law Screening and Merit Requirements, and Determination of Applicable Laws. By Order entered on June 14, 2012, plaintiff's requests for a waiver or suspension of state laws and a determination of applicable state laws were denied, but her request for an extension of time in which to file a medical screening certificate of merit was granted and she was given until July 30, 2012, in which to do so.

On July 9, 2012, plaintiff paid the IPFF. On July 10, 2012, plaintiff filed a motion to apply *res ipsa loquitur* to her claims. By Order entered July 12, 2012, plaintiff was directed to provide copies of her administrative remedies. On July 27, 2012, and July 30, 2012, the plaintiff filed copies of her administrative remedies. By Order entered August 6, 2012, plaintiff's motion for the application of *res ipsa loquitur* to her claims was denied. On September 4, 2012, the plaintiff filed a Motion for Reconsideration of the August 6, 2012 Order, which was denied by Order entered December 12, 2012. On September 14, 2012, plaintiff filed a Motion For Counsel, which was denied by Order entered December 12, 2012.

I.  **The Complaint**

In the complaint, the plaintiff alleges that her right shoulder was originally injured in July 2009 as a result of excessive force and the improper use of restraints by the staff at Texas state BOP holding facility in Texas, while she was a pre-trial detainee, awaiting prosecution on the charges for her present conviction. On October 6, 2009, via magnetic resonance imaging ("MRI"), while still incarcerated at the Texas facility, plaintiff was diagnosed with supraspinatus

insertional tendinopathy and a partial tendon tear of the right shoulder.[1] (One Source Diagnostic Imaging MRI Report, Dkt.# 13-2 at 1-2). On February 5, 2010, she was transferred by the BOP to FPC Greenville, in Greenville, Illinois, where she remained incarcerated until September 20, 2010, when she was transferred to FCI Waseca, in Waseca, Minnesota. She remained incarcerated there until mid-July 2011, when she was transferred again, arriving at Hazelton SFF in Bruceton Mills, West Virginia, on or about August 1, 2011.[2]

The plaintiff alleges that subsequent to her transfer out of the Texas state holding facility, the Government, via its BOP personnel and medical providers, first at Greenville, Illinois; then at Waseca, Minnesota, and finally at Hazelton SFF, embarked upon a course of medical neglect and malpractice. She contends that staff at the three BOP facilities negligently failing to timely diagnose her right shoulder condition; provide her with proper chronic care treatment including pain management and anti-inflammatory medications; failed to timely order a "secondary MRI" to update her diagnosis; failed to ensure that she be cuffed in the front instead of behind her back, to reduce her pain and avoid exacerbating the injury; and failed to surgically repair her torn right shoulder tendon. She concedes that she was given some care for her shoulder injury, but contends that it was inadequate and improper care.

Plaintiff contends that the delay and in denial of appropriate medical and surgical care has caused extreme physical, emotional and mental pain, including increased anxiety and

---

[1] That diagnosis was confirmed by a Texas orthopedic surgeon on November 24, 2009, who noted plaintiff had an impingement syndrome with a distal rim rent tear of the supraspinatus and recommended physical therapy. (Dkt.# 29-2 at 6). During the months of December 2009 – January 2010, while still incarcerated in Texas, plaintiff received twelve physical therapy treatments. (Id. at 7-8).

[2] She remained at Hazelton SFF until on or about June 25, 2012, when she was transferred to a residential re-entry center facility in Texas. The BOP's online Inmate Locator indicates her projected release date is March 17, 2013. See
http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=IDSearch&needingMoreList=false&IDType=IRN&IDNumber=38612-177&x=78&y=14

depression. She requests One Hundred Thousand Dollars ($100,000.00) in monetary damages, as well as all costs, including any costs incurred by necessary travel and lodging, incident to pursuing this case, and injunctive relief in the form of an order directing the BOP to surgically repair her shoulder.

## II. Standard of Review

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. 28 U.S.C. § 1915A. Pursuant to § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Complaints which are frivolous or malicious, must be dismissed. 28 U.S.C. §1915A(b).

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[3] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992).

## II. Analysis

### A. Plaintiffs' FTCA Claims

### 1) Venue

---

[3] Id. at 327.

A tort claim against the United States may be prosecuted "only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). In this case, after the original injury occurred at the BOP holding facility,[4] plaintiff contends the BOP's negligent acts occurred in Illinois and Minnesota, before plaintiff was finally transferred to West Virginia, where was incarcerated when she filed this action.

Plaintiff was a Texas resident prior to her incarceration, and although she filed suit while incarcerated in West Virginia, her residence is at the time she filed suit is not necessarily her place of incarceration.[4] While incarcerated, plaintiff repeatedly requested transfer back to Texas, and since filing suit, has finally been released to a residential re-entry facility in Texas to serve

---

[4] A PACER search reveals that plaintiff has a pending § 1983 action in the Northern District of Texas for claims regarding her right shoulder injury during her pre-trial detention at the Mansfield Law Enforcement Center ("MLEC") from April 17, 2009, until February 5, 2010. (N.D. Tex.) (4:11-cv-00076-Y).

[4] There is a split among the circuits on the issue of whether an inmate's place of incarceration is his residence for purposes of venue. However, the weight of authority has found that a prisoner's place of incarceration is not his residence for purposes of venue. See Flanagan v. Shively, 783 F.Supp. 922, 935 (M.D. Pa.) aff'd, 980 F.2d 722 (3rd Cir. 1992)(inmate does not become resident of state by virtue of his incarceration); see also Keys v. Dep't. of Justice, 288 Fed. Appx. 863 (3rd Cir. 2008) ("Prisoners . . . generally are deemed to be residents, not of their place of incarceration, but of their place of domicile immediately before their incarceration."); Harris v. Lappin, 2008 WL 4371503, at *7 n.4 (N.D. W.Va. Sep. 22, 2008)(noting that the weight of authority has found that a prisoner's place of incarceration is not his residence for purposes of venue); Ellingburg v. Connett, 457 F.2d 240, 241 (5th Cir. 1971) (for purposes of venue, one does not change his residence to his place of incarceration); Holmes v. U.S. Bd. Of Parole, 541 F.2d 1243, 1249-50 (7th Cir. 1976)("We see no reason for purposes of venue under section 1391 to ascribe to [the defendant] the residence of his district of incarceration rather than the district of his domicile."), overruled on other grounds by Arsberry v. Sielaff, 586 F.2d 37 (7th Cir. 1978); see also Grinell Mut. Reinsurance Co. v. Ferando, 2009 U.S. Dist. LEXIS 107431, 2009 WL 4021351, *5 (C.D. Ill. 2009)(finding that venue did not lie in court's district because it was not appropriate to treat the defendant's place of incarceration as his residence for venue purposes); United States v. Lafaive, 2011 U.S. Dist. LEXIS 35183 (N.D. Ind. 2011)(residence has never been considered domicile for diversity purposes; the mere fact that the BOP has currently designated one to a facility in in another state does not make the latter state the "district in which the debtor resides" for purposes of venue under §3004(b)(2); however, the presumption regarding domicile is rebuttable; Brimer v. Levi, 555 F.2d 656 (8th Cir. 1977)(finding venue improper in district where prisoner is confined because presence is involuntary and temporary); Cohen v. United States, 297 F.2d 760, 774 (9th Cir. 1962)("One does not change his residence to the prison by virtue of being incarcerated there."); Bailey v. United States, 1992 U.S. Dist. LEXIS 17307, 1992 WL 331320, at *1 (D. Kan., Oct. 23, 1992)(finding that because the plaintiff offered nothing that reasonably supported an intention to be domiciled in the district of incarceration, his residence for venue purposes was his last chosen place of residence prior to his incarceration); see also Turner v. Kelley, 411 F. Supp. 1331, 1332 (D. Kan. 1976)("residence involves some choice, again like domicile, and . . . presence elsewhere through constraint has no effect upon it.") (citation omitted); Urban Industries, Inc., of Kentucky v. Thevis, 670 F.2d 981, 986 (11th Cir. 1982) (finding that the prisoner retained his Georgia residence even though incarcerated in Indiana); but compare, In re Pope, 580 F.2d 620 (D.C. Cir. 1978)(for general venue purposes a prisoner resides at his place of incarceration).

out the remainder of her sentence. Thus, it is apparent that plaintiff is a Texas resident. Regardless, this Court has the authority under 28 U.S.C. §§ 1404(a) and 1406(a) to transfer this case, or, pursuant to Fed.R.Civ. Pro. 21, sever a portion of it for transfer to any other district or division where it might have been brought, if doing so will be in the interests of justice.[5]

Here, a careful review of the record reveals that part of the events giving rise to the cause of action occurred in Illinois; part occurred in Minnesota and only the third and final portion of the events giving rise to this cause of action actually occurred in West Virginia. Moreover, most of the pertinent records and the majority of the witnesses for the claims arising out of the events that occurred in Illinois and Minnesota are located in Illinois and Minnesota. Thus, Illinois is the forum with the most meaningful connection to the plaintiff's Illinois claims, and Minnesota is the forum with the most meaningful connection to the plaintiff's Minnesota claims.

Therefore, upon a careful review of the rather repetitive claims in plaintiff's complaint, the undersigned is unconvinced that parts of Count I and Count II; and Count IV are proper for adjudication in this jurisdiction. Count I contains medical malpractice claims arising out of acts or omissions in the provision of treatment of plaintiff's right shoulder injury, that allegedly occurred while the plaintiff was housed at FPC Greenville, FCI Waseca, and at Hazelton SFF. Count II is a medical negligence claim against BOP staff and medical providers at FPC Greenville, FCI Waseca, and at Hazelton SFF, for failing to issue medical restrictions to BOP staff regarding cuffing plaintiff behind her back, in view of her shoulder injury. Count III is a medical negligence claim solely against BOP personnel and medical providers at Hazelton FCC, for failure to provide appropriate chronic care treatment, pain management, and surgery to

---

[5] Plaintiff's complaint could also be dismissed under § 1406(a). However, there is a six-month statute of limitations for raising FTCA claims in the district court after the claim has been denied by the appropriate agency. 28 U.S.C. § 2401(b). Were this court to dismiss plaintiffs' claims, even without prejudice, it is likely that plaintiffs' claims would then be time-barred. Accordingly, the interests of justice are best served by transferring this case, rather than dismissing it.

plaintiff, in view of the findings of her then-two year old MRI. Count IV is a medical negligence claim against BOP providers at FPC Greenville and FCI Waseca, for failure to diagnose. Count V is a medical negligence claim solely against BOP personnel and medical providers at Hazelton FCC, for failure to provide appropriate care, including shoulder surgery, after a "secondary" MRI allegedly revealed "more extensive injuries" than the first MRI performed in October 2009. In view of these allegations, this Court is unpersuaded that the claims against BOP providers in Illinois and Minnesota should not be severed and transferred to more appropriate venues in Illinois and Minnesota. Accordingly, the plaintiff shall file a brief **on or before December 27, 2012,** explaining why these claims should not be severed and transferred.

Pursuant to 28 U.S.C. § 1402(b), it appears that only plaintiff's West Virginia FTCA claims contained in parts of Count I and Count II; as well as Count III and Count V, may be brought in this judicial district.

## 2) **Plaintiff's West Virginia Claims of Medical Negligence**

Plaintiff's claims against the Hazelton SFF BOP staff and providers, contained in Counts I, II, III and V, allege that upon her arrival at Hazelton SFF, BOP medical providers ordered another MRI, which she alleges showed more serious damage than the October 2009 MRI performed while she was in Texas. Despite that, she asserts that the Hazelton SFF staff and medical providers denied her timely and appropriate chronic care treatment; denied her appropriate pain management; refused to issue medical restrictions to prevent the BOP staff from cuffing her behind her back; and refused to perform needed shoulder surgery.[6]

---

[6] The undersigned notes that attached to plaintiff's Motion to Apply Res Ipsa Loquitur, is a copy of a BOP "Medical Treatment Refusal," executed on June 19, 2012, stating: "I, Tracy Rhine, refuse treatment recommended by the BOP for the following condition(s): . . . partial tear in tendon of right shoulder that requires surgical repair and diagnostic arthroscopy. The following treatment was recommended: Surgical repair of right shoulder recommended by Orthopedic Surgeon [sic] for diagnostic arthroscopy or acromioplasty for impingement. Federal Bureau of Prisons Medical staff members have carefully explained to me that the following possible consequences and/or complications may result because of my refusal to accept treatment: Ms [sic] Rhine was provided with information

## A. Compliance With W.Va. Code §55-7B-6

To establish a medical negligence claim in West Virginia, the plaintiff must prove:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3.

When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (W.Va. 2000).

---

today that Orthopedic surgery would need provided while incarcerated at USP Hazelton & would not be provided after leaving institution for half-way house placement. Ms [sic] Rhine was given information regarding possible consequence/complications of right shoulder not repaired while as [sic] USP Hazelton to include: loss of range of motion, increase in pain and limitations to ADL's. She verbalized understanding and plans to continue with half-way house placement. I understand the possible consequences and/or complications, listed above, and still refuse recommended treatment. I hereby assume all responsibility for my physical and/or mental condition and release the Bureau of Prisons and its employees from any and all liability for respecting   and following my expressed wishes and directions. . . *signed* Tracy Rhine. Counseled by Tonya Brown-Stobbe. *Signature of witness: _____PAC [illeg] 6-19-12.*"  (Dkt.# 25-2 at 6).

Also attached to the Motion was a copy of a June 19, 2012, Regional Administrative Remedy Appeal by plaintiff, stating, in pertinent part: "On June 19th, 2012 [sic] Mid Atlantic Regional Healthcare Administrator Charleston Iwuagwu issued me an ultimatum conserning [sic] the require [sic] treatment to my right should [sic] as of which [sic] I have been struggling with the Bureau to repair since my arrival at the BOP. Instead of medical treatment what I have received 6 days prior to my departure for the RRC facility is a strong arm tactic of great constitutional magnitude. Mr. Iwuagwu acted out of retaliation with the sole intention of providing or rather inflicting upon myself cruel and unusual punishment, by giving me the ultimatum of either signing a medical refusal [sic] form or losing my RRC placement. I am from Texas despite [sic] several requests on the institutional, regional and central levels of being givent [sic] the same treament [sic] as other inmates in like circumstances and be placed [sic] in a facility close to my home the [sic] BOP and its officials have intentionally sent me farther from my region. While not treating other inmates as cruelly as they have myself . . . I was forced to cocede [sic] . . . and under mental duress signed a refusal [sic] of medical treatment so I could have the benefit of the ability to have housing upon my release from prison, the BOP does nothing but provide a released inmate with a bus ticket and meal money for travel other than that once released an federal [sic] inmate is on their own and I have no outside resources, so without the benefit of RRC placement I have nothing . . . So to avoid having to risk committing a felonious act due to being thrown out on to the street by the bureau of prisons [sic] penniless and homeless with no clothing, I had to submit to a life long ordeal of unnecessary suferrage [sic] and loss of quality of life." Dkt.# 25-2 at 2-3).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

### § 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section. (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W.Va. 2004).[5]

With regard to the appropriate standard of care, the plaintiff has completely failed to sustain her burden of proof. Plaintiff does not assert, much less establish, the standard of care for

---

[5] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

the diagnosis or treatment of a partial tendon tear.[6]   Under the circumstances of this case, plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to the defendant's breach of the duty of care.  Moreover, to the extent the plaintiff's medical negligence claims arise in West Virginia, there is nothing in the complaint which reveals that the plaintiff has met the requirements of W.Va. Code §55-7B-6.

## V.   Recommendation

For the reasons set forth in this Report and Recommendation and Order to Show Cause, it is recommended that plaintiff's FTCA claims against the BOP staff and providers at Hazelton SFF in West Virginia, contained in parts of Count I and II; as well as Count III and Count V be **DISMISSED with prejudice.**

The plaintiff shall file a brief **on or before December 27, 2012,** explaining why the remaining FTCA claims against the BOP providers in Illinois and Minnesota should not be severed and transferred to those Districts.

IT IS SO ORDERED.

**Within fourteen (14) days** after being served with a copy of this recommendation and Show Cause Order, **or by December 27, 2012,** any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.  A copy of any objections should also be submitted to the United States District Judge.  **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such**

---

[6] Plaintiff offers no pleadings, affidavits, or declarations from any medical professional that establishes the applicable community standards for the diagnosis or treatment of a partial tendon tear, and copies of plaintiff's medical records are insufficient to establish the standard of care.

**recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation and Order to Show Cause to the *pro se* petitioner by certified mail, return receipt requested, to her last known address as shown on the docket.

DATED: December 13, 2012

/s/  James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE

.